Jimmie D. LOVING, Defendant–
Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 49S04–9503–CR–351.

Supreme Court of Indiana.

March 16, 1995.

Robert C. Perry, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Cynthia L. Ploughe, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

The defendant, Jimmie D. Loving, Jr., was convicted of voluntary manslaughter and carrying a handgun without a license. The Court of Appeals affirmed in a memorandum decision. We grant the defendant's petition to transfer.

In his appeal, the defendant seeks the reversal of his conviction and remand for retrial, presenting two issues, one of which is dispositive: whether the trial court erred in denying the defendant's motion to suppress statements obtained by police in violation of his *Miranda*[1] rights.

When the police first arrived at the scene of a fatal shooting, the defendant was present, appeared intoxicated, and told police that he had been drinking in the room with other people when someone forced a door open, stood in the doorway, and shot the victim. Although police did not then consider the defendant and the victim's brother, who was also present, to be suspects, they were both asked to come to the police station to describe what had occurred. Both men were handcuffed and placed in the back seat of the squad car and taken to Indianapolis Police Department Headquarters. He was later taken into an eight foot by eight foot interrogation room inside the IPD homicide office, and Indianapolis Police Officer Rich-

---

1. *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

ard Benton commenced questioning. The defendant was not handcuffed during the questioning; however, he was not informed that he was free to leave. Considering the defendant to be only a witness and not a suspect, Officer Benton—without advising him of his *Miranda* rights—proceeded to ask preliminary questions regarding name, date of birth, Social Security number, current address, and what had happened at the scene of the shooting. After the defendant's initial explanation, Officer Benton told him that his story was not consistent with what the police had found at the scene, whereupon the defendant admitted firing his handgun. At this point, Officer Benton advised the defendant of his *Miranda* rights. The defendant then expressed his desire to consult an attorney. The trial court denied the defendant's motion to suppress, and Officer Benton's testimony regarding the defendant's statements was admitted at trial over objection.

 The fifth and fourteenth amendments to the United States Constitution guarantee a suspect the right to the presence and advice of counsel during custodial interrogation by the police. *Brown v. State* (1991), Ind., 577 N.E.2d 221, 229, *reh'g denied,* 583 N.E.2d 125, *cert. denied* (1992), ── U.S. ──, 113 S.Ct. 101, 121 L.E.2d 61. The United States Supreme Court held in *Miranda* that a person who has been "taken into custody or otherwise deprived of his freedom of action in any significant way" must, before being subjected to interrogation by law enforcement officers, be advised of his rights to remain silent and to the presence of an attorney and be warned that any statement he makes may be used as evidence against him. *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706–07. Statements elicited in violation of this rule are generally inadmissible in a criminal trial. *Id.*

 The law enforcement officer's duty to give *Miranda* warnings does not attach unless "there has been such a restriction on a person's freedom as to render him 'in custody.'" *Oregon v. Mathiason* (1977), 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714, 719 (*per curiam*). To determine whether a person was in custody, we must examine all circumstances surrounding the interrogation.

*Stansbury v. California* (1994), ── U.S. ──, ──, 114 S.Ct. 1526, 1529, 128 L.Ed.2d 293, 298 (*per curiam*). Our "ultimate inquiry is simply whether there [has been] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler* (1983), 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275, 1279 (*per curiam*) (quoting *Mathiason,* 429 U.S. at 495, 97 S.Ct. at 714, 50 L.Ed.2d at 719).

 Whether a person was in custody at a given time depends not upon the subjective views of either the interrogating officers or the subject being questioned but upon the "objective circumstances." *Stansbury,* ── U.S. at ──, 114 S.Ct. at 1529, 128 L.Ed.2d at 298. An officer's knowledge and beliefs are only relevant to the question of custody if conveyed—through either words or actions—to the individual being questioned. *Stansbury,* ── U.S. at ──, 114 S.Ct. at 1530, 128 L.Ed.2d at 299. Likewise, a police officer's "unarticulated plan has no bearing on the question" of custody. *Berkemer v. McCarty* (1984), 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317, 336. The test is how a reasonable person in the suspect's shoes would understand the situation. *Id.* at 442, 104 S.Ct. at 3151, 82 L.Ed.2d at 336.

 Here, the testimony of the various officers that they considered the defendant merely a witness—not a suspect—is irrelevant to our inquiry, as the record does not reflect that they ever communicated such a belief to the defendant. Rather, their actions conveyed the opposite message. The defendant was questioned at the crime scene by various police officials, handcuffed, placed in the back of a marked police car, and taken to the police station by uniformed police officers. He was thereafter taken into an interrogation room measuring approximately eight feet by eight feet by a police officer, who, without telling the defendant that he was free to leave, began to question him about what had happened. Particularly in view of the initial use of handcuffs, we find that a reasonable person in the defendant's circumstances would not have believed himself to be free to leave but would instead

have considered his freedom of movement to have been restrained to the "degree associated with a formal arrest." *See Beheler*, 463 U.S. at 1125, 103 S.Ct. at 3520, 77 L.Ed.2d at 1279. Thus we find, as did the Court of Appeals, that the defendant was in custody at the time Officer Benton questioned him.

We must next determine whether Officer Benton's conversation with the defendant constituted police interrogation. The *Miranda* warnings must be given "whenever a person in custody is subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis* (1980), 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297, 307–08. The term "interrogation" for purposes of *Miranda* analysis includes both express questioning and words or actions that, given the officer's knowledge of any special susceptibilities of the interviewee, the officer should know are reasonably likely to have the force of a question on the person being questioned. *Pennsylvania v. Muniz* (1990), 496 U.S. 582, 600–01, 110 S.Ct. 2638, 2650, 110 L.Ed.2d 528, 551–52. However, routine administrative questions such as name, address, height, and weight, regardless whether considered within a "routine booking exception" or whether deemed "not testimonial," are removed from the requirements of *Miranda*.[2] *Id.* at 601–02, 608, 110 S.Ct. at 2650, 2654, 110 L.Ed.2d at 552, 556. Therefore, when Office Benton asked the defendant's name, address, and so forth, no *Miranda* violation had yet occurred. However, before the officer asked what happened at the crime scene, the *Miranda* warnings should have been given. Furthermore, Officer Benton's comment upon the inconsistency between the defendant's account and the physical evidence found at the scene amounts to interrogation under *Innis* and *Muniz*, because the officer should have known his words were reasonably likely to have the force of a question on the defendant. Officer

Benton's expression of doubt was tantamount to saying, "I know you're lying. Why don't you tell me the truth?" Given the circumstances, he should have known that the defendant's response was reasonably likely to be useful to the prosecution at his trial. The comment was thus the functional equivalent of questioning, as described in *Innis*.

We therefore conclude that the defendant's responses to Officer Benton's questions regarding the events at the crime scene were unconstitutionally obtained during a custodial interrogation and thus were erroneously admitted into evidence. The convictions are vacated and this cause is remanded to the trial court for a new trial or other proceedings consistent herewith.

DeBRULER, SULLIVAN and SELBY, JJ., concur.

SHEPARD, C.J., concurs in result.

---

**2.** The Supreme Court has been divided as to the rationale for excluding routine booking questions from the *Miranda* requirements. One plurality, including Justices Brennan, O'Connor, Scalia, and Kennedy, relies upon a "routine booking question" exception. In a separate plurality opinion, Chief Justice Rehnquist, joined by Justices White, Blackmun, and Stevens, reasons that it is unnecessary to apply a "routine booking question" exception because responses to "booking" questions are not "testimonial" and thus are not protected by the *Miranda* rule. *Muniz*, 496 U.S. at 608, 110 S.Ct. at 2654, 110 L.Ed.2d at 556. This distinction is not pertinent in the present case because, as in *Muniz*, the result is the same regardless of which rationale is applied.