Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
May 20 2014, 9:02 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL FRISCHKORN**
Frischkorn Law LLC
Fortville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CLIFTON BROOKS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 30A05-1306-CR-299 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

### APPEAL FROM THE HANCOCK SUPERIOR COURT
The Honorable Terry K. Snow, Judge
Cause No. 30D01-1209-FC-1374

**May 20, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Clifton Brooks appeals his conviction for operating a motor vehicle while privileges are forfeited for life as a class C felony. Brooks raises one issue, which we revise and restate as whether Brooks is entitled to reversal due to the admission of certain testimony of a police officer. We affirm.

FACTS AND PROCEDURAL HISTORY

At approximately 11:30 p.m. on September 6, 2012, Indiana State Police Trooper Rusty Slater observed a vehicle parked on the side of the roadway with its flashers on along a rural part of State Road 234 in Hancock County, Indiana. Trooper Slater activated the emergency lights of his fully marked police vehicle, pulled his police vehicle along the roadway, exited his police vehicle, and noticed Brooks standing near the rear end of the vehicle off the roadway. Trooper Slater asked Brooks "what was going on," and Brooks stated that "he was broke down" and "he just got off work from Mount Vernon High School and was driving back to Anderson where he lived at." Transcript at 65. Trooper Slater did not observe any other person around or walking away from the vehicle. Trooper Slater asked Brooks if he owned the vehicle, and Brooks said that his girlfriend was the vehicle's owner. Id. at 66. Trooper Slater asked Brooks "where [his girlfriend] was at and he stated she was babysitting." Id. Trooper Slater asked for Brooks's identification, and Brooks produced an Indiana identification card. Trooper Slater then "asked [Brooks] if he was suspended and he stated yes." Id. at 67. At that point, Trooper Slater walked back to his police vehicle and ran Brooks's information and discovered that his "license status was HTV [habitual traffic violator] Life." Id.

2

On September 7, 2012, the State charged Brooks with operating a motor vehicle while privileges are forfeited for life as a class C felony. At a jury trial, the State elicited testimony from Trooper Slater consistent with the foregoing. In addition, the prosecutor asked Trooper Slater "what did Mr. Brooks tell you about how he got there," and Trooper Slater responded "[h]e stated he was driving from his work at Mount Vernon School where he was employed as a custodian," and the State said "[a]nd he said he was the one driving," and Trooper Slater stated "[t]hat is correct." Id. at 66. After Trooper Slater testified that he learned that Brooks's license "was HTV Life," the State asked "[d]id you question [] him on why he was the one driving," and Trooper Slater testified: "After I ran his license I asked him, I confirmed with him what I had found out and he agreed. I asked him why he was driving and he said he – he didn't know he was driving, he was trying to get to work and sometimes he didn't have the means. He stated that he drove the night before as well." Id. at 67. Brooks did not object to Trooper Slater's testimony. The jury found Brooks guilty as charged. The court sentenced Brooks to three years, with two years to be served at the Department of Correction ("DOC") and one year suspended to probation. The court also ordered that Brooks may serve the executed portion of his sentence in Hancock County Community Corrections if accepted and may be transferred to Madison County Community Corrections if accepted.

## DISCUSSION

The issue is whether Brooks is entitled to reversal due to the admission of Trooper Slater's testimony regarding Brooks's statements. The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission

3

of evidence only for abuse of discretion. Wilson v. State, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs "where the decision is clearly against the logic and effect of the facts and circumstances." Smith v. State, 754 N.E.2d 502, 504 (Ind. 2001). "Errors in the admission or exclusion of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party." Fleener v. State, 656 N.E.2d 1140, 1141 (Ind. 1995) (citations omitted).

Brooks contends that his statement that he had been driving and that his license was suspended should not have been admitted into evidence because his Fifth Amendment and Miranda rights were violated. The record reflects, and the parties agree, that Brooks did not object to the challenged testimony of Trooper Slater at trial. As a result, Brooks waived his argument regarding an alleged violation of his Fifth Amendment. See Meriwether v. State, 984 N.E.2d 1259, 1263 (Ind. Ct. App. 2013) (finding the defendant waived his argument regarding an alleged violation of his Fifth Amendment rights because he did not object to the admission of the evidence during trial but, waiver notwithstanding, addressing the defendant's arguments), trans. denied. Waiver notwithstanding, we address Brooks's contention. Brooks asserts that Trooper Slater's question asking him if his license was suspended along with Brooks's previous statement that he had driven violated his Fifth Amendment right against self-incrimination. Brooks asserts that he was in custody when Trooper Slater asked him if his license was suspended, that the questions asked by Trooper Slater constituted interrogation for the purposes of advising Brooks of his Miranda rights, and that the trial court committed fundamental error when it allowed Trooper Slater to testify about

questions asked of Brooks without informing Brooks of his Miranda rights. The State maintains in part that Brooks was not in custody for purposes of Miranda when he stated that he drove the vehicle and there is no indication or allegation that his statements were coerced.

Brooks essentially claims that Trooper Slater's questioning of him, which led to his statement that he had been driving and that his license was suspended, was improper because it constituted a custodial interrogation implicating the Fifth Amendment and necessitating the giving of Miranda warnings. The Fifth Amendment to the United States Constitution states, in relevant part: "No person shall . . . be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law[.]" A person who has been taken into custody or otherwise deprived of his freedom of action in any significant way must, before being subjected to interrogation by law enforcement officers, be advised of his rights to remain silent and to the presence of an attorney and be warned that any statement he makes may be used as evidence against him. Loving v. State, 647 N.E.2d 1123, 1125 (Ind. 1995) (citing Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966)). Statements elicited in violation of this rule are generally inadmissible in a criminal trial. Id.

"The law enforcement officer's duty to give Miranda warnings does not attach unless there has been such a restriction on a person's freedom as to render him in custody." Id. (citation and internal quotation marks omitted). The Indiana Supreme Court has held:

> Whether a person was in custody at a given time depends not upon the
> subjective views of either the interrogating officers or the subject being

5

questioned but upon the "objective circumstances." An officer's knowledge and beliefs are only relevant to the question of custody if conveyed—through either words or actions—to the individual being questioned. Likewise, a police officer's "unarticulated plan has no bearing on the question" of custody. The test is how a reasonable person in the suspect's shoes would understand the situation.

Meriwether, 984 N.E.2d at 1263 (citing Loving, 647 N.E.2d at 1125 (citations omitted)).

"A person stopped by police, while 'seized' and momentarily not free to go, is ordinarily not considered in custody." Id. (citing Meredith v. State, 906 N.E.2d 867, 873 (Ind. 2009)); see also Clarke v. State, 868 N.E.2d 1114, 1119 (Ind. 2007) (observing that a suspect who has been stopped and therefore seized is not necessarily in custody and that there is a difference between an investigatory stop and police custody, and holding that the defendant, who had been asked by a police officer if there was anything illegal in his car parked in an apartment parking lot, "had not been 'seized,' much less placed in custody"). In addition, we note that, "[o]rdinarily, persons detained for traffic stops are not 'in custody' for purposes of Miranda." Lockert v. State, 747 N.E.2d 539, 543 (Ind. 2001) (citing Berkemer v. McCarty, 468 U.S. 420, 440 (1984)), reh'g denied. In distinguishing between custodial encounters and non-custodial encounters, the ultimate inquiry is whether there was a formal arrest, or a restraint on freedom of movement of the degree associated with a formal arrest. Meredith, 906 N.E.2d at 873. We consider all circumstances surrounding the encounter, and apply an objective test asking whether a reasonable person under the same circumstances would believe that he was under arrest or otherwise not free to resist the entreaties of the police. Id. Factors we consider are whether the defendant was handcuffed or restrained in any way; whether he was told that he was a suspect in a crime; how vigorous was the law enforcement interrogation;

6

whether the police suggested the defendant should cooperate, implied adverse consequences for noncooperation, or suggested that the defendant was not free to go about his business; and the length of the detention. Id.

At the time he arrived at the side of the roadway on State Road 234 and activated his emergency lights, Trooper Slater was checking on the welfare of the driver of the vehicle located on the side of the roadway with its flashers on. When asked "what was going on," Brooks volunteered "that he was broke down, that he just got off work from Mount Vernon High School and was driving back to Anderson where he lived at." Transcript at 65. Brooks stated he was driving from Mount Vernon School where he was employed and that he was the one driving. When Brooks produced an Indiana identification card, Trooper Slater asked "if he was suspended and he stated yes." Id. at 67. At the stage during the encounter when Trooper Slater initially asked Brooks what was going on and if his driver's license was suspended, Brooks was not restrained in any way, there was no indication he was a suspect in a crime, Trooper Slater's questioning of Brooks was not vigorous or prolonged, and the length of any detention was minimal. There is no evidence of police coercion. Trooper Slater had activated his vehicle's emergency lights when he pulled over, but he had parked his police vehicle on the side of a roadway at 11:30 p.m. A reasonable person in Brooks's position at this stage in the encounter would not have concluded that his freedom was being restricted to a "degree associated with a formal arrest" as to render him in custody. Meredith, 906 N.E.2d at 873.

7

Based on the record, we conclude that Brooks was not in custody for the purpose of <u>Miranda</u> when Trooper Slater initially asked him "what was going on" and moments later asked if his license was suspended. <u>See</u> <u>Berkemer</u>, 468 U.S. at 439 (holding that a motorist who merely is stopped for roadside questioning "to determine his identity and to . . . obtain information confirming or dispelling the officer's suspicions" is not considered to be in custody for <u>Miranda</u> purposes); <u>Meriwether</u>, 984 N.E.2d at 1262-1263 (Ind. Ct. App. 2013) (noting that the police officer activated his spotlight, smelled burnt marijuana, and did not physically restrict or touch the defendant before he made a statement regarding the marijuana in the car, observing that, when asked if there was anything the officer should know about in his vehicle, the defendant voluntarily indicated he had marijuana, and holding that the defendant was not in custody for the purpose of <u>Miranda</u> and that the trial court did not abuse its discretion when it admitted the defendant's statement) (citing <u>Jones v. State</u>, 655 N.E.2d 49, 55 (Ind. 1995) (holding the defendant was never in the care and control of the police or interrogated in a manner implicating the Fifth Amendment and necessitating the giving of <u>Miranda</u> warnings where the police ordered the defendant from his car and other officers on the scene partially blocked his exit from the scene)); <u>State v. Hicks</u>, 882 N.E.2d 238, 243 (Ind. Ct. App. 2008) (holding the defendant was not in custody when a police officer asked her if she was driving a disabled vehicle in the immediate vicinity).

The facts here are distinguishable from cases where the defendant was found to be in custody. <u>See</u> <u>Sellmer v. State</u>, 842 N.E.2d 358 (Ind. 2006) (finding the defendant was in custody where an officer repeatedly asked the defendant about her suspected criminal

activity, told the defendant it was in her best interest to cooperate, and did not answer truthfully when the defendant asked about her rights); Crocker v. State, 989 N.E.2d 812, 819 (Ind. Ct. App. 2013) (observing that, although the defendant was not physically restrained, the officer had a high degree of control over the environment, the officer required the defendant to sit in the officer's car, the officer employed subterfuge, and the officer administered a field sobriety test, and holding that a reasonable person who is told to sit in a police vehicle and then immediately subjected to a field sobriety test would not feel free to leave and that the defendant was in custody when he was questioned in the officer's vehicle), trans. denied; Friend v. State, 858 N.E.2d 646, 651 (Ind. Ct. App. 2006) (noting that, while the defendant was not under arrest, the defendant had been patted down for weapons, detained for roughly forty-five minutes, and told repeatedly to stay in the patrol car, and holding that a reasonable innocent person in the defendant's position would not believe that he was free to leave or to resist the entreaties of the police).

To the extent Brooks was in custody for the purpose of Miranda at a subsequent point during the encounter when Trooper Slater confirmed what he had learned regarding the status of his driver's license and again asked Brooks if he had been driving, we observe that Brooks had already stated he had been driving and his driver's license was suspended and thus any additional statements to that effect were merely cumulative. The trial court did not abuse its discretion or commit fundamental error in admitting the challenged testimony into evidence. See Meriwether, 984 N.E.2d at 1262-1264. Brooks was not deprived of a fair trial and is not entitled to reversal.

9

## CONCLUSION

For the foregoing reasons, we affirm Brooks's conviction for operating a motor vehicle while privileges are forfeited for life as a class C felony.

Affirmed.

VAIDIK, C.J., and NAJAM, J., concur.