## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 13 2018, 9:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer L. Koethe
LaPorte, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Thomas Tracy, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | June 13, 2018 <br><br> Court of Appeals Case No. 46A03-1709-CR-2151 <br><br> Appeal from the LaPorte Superior Court <br><br> The Honorable Richard R. Stalbrink, Jr., Judge <br><br> Trial Court Cause No. 46D02-1609-F3-820 |

**Barnes, Judge.**

# Case Summary

Thomas Tracy appeals his conviction for Level 3 felony aggravated battery. We affirm.

# Issues

Tracy raises four issues, which we restate as:

> I. whether the trial court properly admitted Tracy's statements to an officer;
>
> II. whether the trial court properly refused Tracy's proposed self-defense instruction;
>
> III. whether the trial court properly excluded evidence of synthetic marijuana found on the victim; and
>
> IV. whether the deputy prosecutor committed prosecutorial misconduct.

# Facts

In July 2016, Tracy and Brandon Black were inmates at the Indiana State Prison in Michigan City. Officer Krystal Boyer was employed by the prison and was working at a checkpoint. Tracy and Black, who worked as porters in the mental health unit, were leaving the unit to return to their own units. Officer Boyer let the men out of the mental health unit, locked the gate, and heard "scuffling." Tr. Vol. II p. 39. She saw Tracy and Black "kind of running back and forth," Black "had his hands up," and Black was saying that "he wasn't doing anything, but that he was being attacked." *Id.* Tracy was being

aggressive, and Black was trying to run away or back away. Officer Boyer told them to stop several times and grabbed her radio to tell other officers that a fight had started. Officer Boyer thought she saw a weapon in Tracy's hand.

[4] Sergeant Chris Puetzer and Officer Ryan Statham responded to Officer Boyer's radio signal, and they arrived on the scene within seconds. Sergeant Puetzer ordered Tracy and Black to get on the ground, and Black complied. Black was frightened and said, "I'm not swinging back. I'm not swinging back." *Id.* at 76. Officer Statham saw a string and a weapon fall out of Tracy's sleeve. When Tracy hesitated to comply with the officer's order, the officers sprayed him with pepper spray. Tracy then complied and asked "something along the lines of 'did I kill him' or 'I hope I killed him.'" *Id.* at 63. After Tracy and Black were secured, the officers found a weapon in the grass near Tracy. The weapon was a sharpened piece of metal with a cloth and rubber band handle attached to a string. Black had puncture wounds to his left chest and left back. Tracy had no injuries.

[5] The State charged Tracy with Level 1 felony attempted murder and Level 3 felony aggravated battery. Tracy filed a motion to suppress "any and all oral and written communications, confessions, statements, admissions or tests, alleged to have been made by the Defendant prior to, at the time of, or subsequent to his arrest in this cause." Appellant's App. Vol. II p. 30. Tracy alleged that he had made certain "oral statements" that had to be suppressed because he was subject to a custodial interrogation and was not informed of his *Miranda* rights. The trial court granted Tracy's motion. At Tracy's jury trial,

the jury found him guilty of aggravated battery and deadlocked on the attempted murder charge. The trial court sentenced Tracy to twelve additional years in the Indiana Department of Correction for the aggravated battery conviction. Tracy now appeals.

## Analysis

### I. Admission of Tracy's Statement

This argument concerns Tracy's statement to the officers during the incident. After the officers secured both Tracy and Black, Tracy said "something along the lines of 'did I kill him' or 'I hope I killed him.'" Tr. Vol. II p. 63. Tracy argues that the trial court's admission of his statement violated the previously-granted motion to suppress and Tracy's Fifth Amendment rights.[1]

This issue is more appropriately framed as whether the trial court abused its discretion by admitting the evidence at the trial. *See Washington v. State*, 784 N.E.2d 584, 586-87 (Ind. Ct. App. 2003). The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs "where the decision is

---

[1] The State argues that the motion to suppress concerned only Tracy's statement to Officer Charles Whelan during an interview after the incident. The State concedes that Tracy's statements to Officer Whelan were inadmissible.

clearly against the logic and effect of the facts and circumstances." *Smith v. State*, 754 N.E.2d 502, 504 (Ind. 2001).

[8] The Fifth Amendment to the United States Constitution, made applicable to the States via the Fourteenth Amendment, provides: "No person shall . . . be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law[.]" The United States Supreme Court held in *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966), "that a person questioned by law enforcement officers after being 'taken into custody or otherwise deprived of his freedom of action in any significant way' must first 'be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.'" *Stansbury v. California*, 511 U.S. 318, 322, 114 S. Ct. 1526, 1528 (1994) (quoting *Miranda*, 384 U.S. at 444, 86 S. Ct. at 1612). The required announcement of *Miranda* rights is triggered by a custodial interrogation. *State v. Brown*, 70 N.E.3d 331, 335 (Ind. 2017). "Under *Miranda*, 'interrogation' includes express questioning and words or actions on the part of the police that the police know are reasonably likely to elicit an incriminating response from the suspect." *White v. State*, 772 N.E.2d 408, 412 (Ind. 2002) (citing *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 1689-90 (1980); *Loving v. State*, 647 N.E.2d 1123, 1126 (Ind. 1995)). Volunteered statements do not amount to interrogation. *Id.*

Here, during the incident, after the officers secured Tracy, he said "something along the lines of 'did I kill him' or 'I hope I killed him.'" Tr. Vol. II p. 63. This statement was volunteered; it was not made in response to any interrogation by the officers. Consequently, the statement was not obtained as a result of a custodial interrogation, and the trial court did not abuse its discretion by admitting the officer's testimony concerning the statement.

## II. Instructions

Tracy argues that the trial court abused its discretion by refusing to give his tendered self-defense instruction. Tracy proposed the pattern jury instruction regarding self-defense, which the trial court rejected because it concluded there was no evidence presented to support giving the instruction.

The manner of instructing a jury lies largely within the discretion of the trial court, and we will reverse only for an abuse of discretion. *Henson v. State*, 786 N.E.2d 274, 277 (Ind. 2003). "'In determining whether a trial court abused its discretion by declining to give a tendered instruction, we consider the following: (1) whether the tendered instruction correctly states the law; (2) whether there was evidence presented at trial to support giving the instruction; and (3) whether the substance of the instruction was covered by other instructions that were given.'" *Id.* (quoting *Lampkins v. State*, 778 N.E.2d 1248, 1253 (Ind. 2002)). The issue on appeal is whether the evidence presented at trial supported the giving of Tracy's proposed self-defense instruction.

[12] "A defendant in a criminal case is entitled to have the jury instructed on any theory of defense that has some foundation in the evidence." *Ault v. State*, 950 N.E.2d 326, 328 (Ind. Ct. App. 2011), *trans. denied*. We apply this rule even if the evidence is weak and inconsistent so long as the evidence presented at trial has some probative value to support it. *Id.* Further, we recognize it is within the province of the jury to determine whether the defendant's evidence was believable, unbelievable, or sufficient to warrant the use of force. *Id.*

[13] Indiana Code Section 35-41-3-2(c) provides:

> A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force. However, a person:
>
> (1) is justified in using deadly force; and
>
> (2) does not have a duty to retreat;
>
> if the person reasonably believes that that force is necessary to prevent serious bodily injury to the person or a third person or the commission of a forcible felony. No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting the person or a third person by reasonable means necessary.

[14] Tracy argues that there was evidence to support the giving of the self-defense instruction because the video of the incident shows that Black "had his hand on his side," there was no evidence to show that Tracy originally had the weapon used, and no witness testified as to how the fight started. However, the video of

the incident shows Tracy attacking Black, there is no evidence that Black was armed, and there is no evidence that Black was the aggressor here. The trial court properly found that the proposed self-defense instruction was not supported by the evidence. *See, e.g., Henson*, 786 N.E.2d at 279 (concluding that the evidence did not support the giving of a self-defense instruction).

### III. *Evidence Regarding the Victim*

Tracy argues that the trial court abused its discretion by excluding evidence that Black had synthetic marijuana in his possession at the time of the incident. Tracy argued that the evidence was relevant because "to the extent he ingested some of the contraband that he was carrying makes him more likely that he would act in a - - disorderly manner and a threatening manner, especially with the K2-type substance." Tr. Vol. II p. 106. The State argued that the admission of the evidence would violate Indiana Evidence Rule 404(b), and the trial court excluded the evidence.

Our supreme court held in *Garland v. State*, 788 N.E.2d 425, 430 (Ind. 2003), that Indiana Evidence Rule 404(b) can be applied to the admissibility of evidence about prior bad acts by persons other than defendants. Under Indiana Evidence Rule 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Evid. R. 404(b)(2). The law governing the admissibility

of specific acts evidence for "other purposes" requires a trial court to make three findings. *Camm v. State*, 908 N.E.2d 215, 223 (Ind. 2009). First, the court must determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act. *Id.* Second, the court must determine that the proponent has sufficient proof that the person who allegedly committed the act did, in fact, commit the act. *Id.* Third, the court must balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403. *Id.*

[17] According to Tracy, the evidence of Black's possession of synthetic marijuana was admissible to "show that it could have had a variety of effects on Mr. Black's demeanor at the time of the altercation." Appellant's Br. p. 14. Tracy implies that, because Black had possession of synthetic marijuana, Black could have been acting aggressively at the time of the incident. In Tracy's offer to prove, an officer testified that ingesting synthetic marijuana causes a variety of symptoms ranging from "feeling good" to "crazy behavior." Tr. Vol. II p. 114. The fact that Black had synthetic marijuana in his possession simply is not relevant to show Black's "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Evid. R. 404(b)(2). There is no evidence that Black had consumed the synthetic marijuana and no evidence that he was acting aggressively. The evidence was not admissible under Indiana Evidence Rule 404(b). The trial court properly excluded the evidence.

## IV. Prosecutorial Misconduct

[18]    Next, Tracy argues that the deputy prosecutor committed prosecutorial misconduct. During closing arguments, the deputy prosecutor stated:

> [Defense counsel] also wants to tell you at the hospital Brandon Black had opiates in his system. At the hospital, Brandon Black had opiates in his system. That's certainly not pertinent in any realm. He went to a hospital to be treated for being stabbed. He received opiates at the hospital. The pertinent time frame even for this argument that [defense counsel] would suggest would be did anyone have drugs in their system at the time of the attack. But even then that doesn't matter because when you read the elements of the crime, nowhere will you see that Brandon Black had to be drug free. Nowhere will you see that Brandon Black had to be a Boy Scout. You won't see anything about Brandon Black, except you'll see that one of the elements of the crime is that Thomas Tracy stabbed him. Not an element of the crime. Nothing else. You don't have to consider that at all. If you do consider it, please realize, those hospital records are from the hospital where he was receiving pain medication. *It doesn't matter if he was high as a kite, which the defense could not prove with those evidentiary records.*

Tr. Vol. II pp. 147-48 (emphasis added). Tracy objected to the emphasized language, arguing that he was under no obligation to make any proof. The trial court offered to instruct the jury that Tracy did not have an obligation of proof before it "started instructions." *Id.* at 148. After closing arguments, the trial court informed counsel that it would not give an additional instruction because one of the existing instructions covered the issue. Defense counsel then said, "Okay. That's fine, Judge. Thank you." *Id.* at 150. Defense counsel then said,

"Would you show my motion for mistrial based on the misrepresentation of the burden," and the trial court denied the motion for a mistrial. *Id.*

[19] "In reviewing a claim of prosecutorial misconduct properly raised in the trial court, we determine (1) whether misconduct occurred, and if so, (2) 'whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected' otherwise." *Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014) (quoting *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006)). "A prosecutor has the duty to present a persuasive final argument and thus placing a defendant in grave peril, by itself, is not misconduct." *Id.* "'Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct.'" *Id.* (quoting *Cooper*, 854 N.E.2d at 835). "To preserve a claim of prosecutorial misconduct, the defendant must—at the time the alleged misconduct occurs—request an admonishment to the jury, and if further relief is desired, move for a mistrial." *Id.*

[20] "The Fifth Amendment privilege against self-incrimination is violated 'when a prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence.'" *Dumas v. State*, 803 N.E.2d 1113, 1118 (Ind. 2004) (quoting *Moore v. State*, 669 N.E.2d 733, 739 (Ind. 1996)). "However, statements by the prosecutor concerning the uncontradicted nature of the State's evidence do not violate the

defendant's Fifth Amendment rights." *Id.* "Rather, comment on the lack of defense evidence is proper so long as the State focuses on the absence of any evidence to contradict the State's evidence and not on the accused's failure to testify." *Id.*

During closing argument, defense counsel suggested that Black was intoxicated on opiates at the time of the offense. The deputy prosecutor pointed out during her closing argument that opiates were administered to Black at the hospital and that the medical records did not support defense counsel's argument. We conclude the deputy prosecutor's statements were "well within the permissible range of fair commentary on the evidence or lack thereof" and were not a comment on Tracy's right not to testify. *See Dumas*, 803 N.E.2d at 1118 (rejecting the defendant's argument that the deputy prosecutor commented on his right not to testify). Tracy's argument fails.

## Conclusion

The trial court properly admitted Tracy's voluntary statement; the trial court properly rejected Tracy's self-defense instruction; the trial court properly excluded evidence that the victim had synthetic marijuana in his possession during the incident; and the deputy prosecutor did not commit prosecutorial misconduct. We affirm Tracy's conviction for Level 3 felony aggravated battery.

Affirmed.

Vaidik, C.J., and Pyle, J., concur.