Ronnie E. POLK, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 79A02–0407–PC–565.

Court of Appeals of Indiana.

Feb. 11, 2005.

Transfer Denied April 7, 2005.

Susan K. Carpenter, Public Defender, Chris Hitz–Bradley, Deputy Public Defender, Indianapolis, IN, for Appellant.

Steve Carter, Attorney General, Stephen Tesmer, Deputy Attorney General, Indianapolis, IN, for Appellee.

## OPINION

SHARPNACK, Judge.

Ronnie E. Polk appeals the post-conviction court's denial of his petition for post-conviction relief. Polk raises two issues, which we revise and restate as:

I.  Whether Polk was denied the effective assistance of trial counsel;  and

II.  Whether the trial court improperly enhanced Polk's sentence.

We affirm.

The relevant facts, as found in the record and set forth in our supreme court's opinion in Polk's direct appeal, follow. "In the early morning hours of July 5, 1995, [Polk] was a passenger in a moving vehicle that was stopped by police for a traffic violation in Lafayette, Indiana." *Polk v. State*, 683 N.E.2d 567, 568 (Ind.1997). The police also stopped a vehicle driven by Gordon Ivens Jr. two or three blocks away.

Officer Dennis Cole watched Polk while Officer Brad Hayworth talked to the driver, Joyce Lamberson. Officer Hayworth noticed a black zippered pouch [1] on the

---

1.  Our supreme court referred to this container as a "black zippered pouch" and "pouch." *Polk,* 683 N.E.2d at 568. Polk refers to it as a "shaving kit" and "men's shaving kit." Appellant's Brief at 7, 14. We will refer to this container as a pouch.

dash in front of Polk, a fanny pack around Polk's waist, and a purse between the front seats. Officer Hayworth asked the driver, Lamberson, to step out of the vehicle to perform a field sobriety test. Polk removed the fanny pack from around his waist and placed it on the dashboard next to the black pouch. Lamberson passed the field sobriety test. Officer Hayworth obtained Lamberson's consent to search the car. After Officer Hayworth told Officer Cole that he was going to search the car, Officer Cole asked Polk to step out of the car. When Polk got out of the car, he removed the fanny pack from the dashboard and took it with him. Officer Hayworth conducted a search of the vehicle, unzipped the black pouch that was lying on the passenger side dashboard, and found drug paraphernalia inside.

Officer Hayworth asked Lamberson who owned the pouch, and she indicated that Polk owned the pouch. When Officer Hayworth and Sergeant David Payne asked Polk about the pouch, Polk told them that it belonged to someone who had been in the car earlier and maintained that he did not smoke cocaine. Sergeant Payne asked Polk if he would take a drug screen and if they could search the fanny pack. Polk said yes and handed the fanny pack to Sergeant Payne. Officer Hayworth searched the fanny pack and found a short piece of pipe that had gray tape wrapped around one end and burn marks on the other end and two small rock shaped objects that appeared to be crack cocaine.

Polk was arrested and patted down for weapons. During this search, several tablets were found in a pocket of Polk's pants that later proved to be a Schedule IV controlled substance (diazepam). Hayworth also felt a fist-sized item in the rear crotch of Polk's pants. Believing that the item was not a weapon, Hayworth did not attempt to remove it. The defendant was handcuffed and then placed in the rear seat of Hayworth's police car. He was left alone there for four to five minutes. It is undisputed that these events took place less than 1,000 feet from Highland Christian School in Lafayette.

Officer Hayworth next drove Polk to a nearby hospital for a drug test and accompanied Polk into a hospital bathroom to monitor Polk as he gave a urine sample. At that point, Hayworth determined that the fist-sized item was no longer in Polk's pants or anywhere on his person. After releasing Polk to the custody of the Tippecanoe County Jail, Hayworth checked the rear seat cushion of his police car for the missing object. A plastic bag containing several rock substances that were subsequently determined to be crack cocaine was found under the rear seat cushion. The bag was approximately the same size as the item Hayworth had felt earlier in Polk's pants. Hayworth testified that (1) he had a steady practice of checking at the beginning of each shift for items or contraband under the rear seat cushion of his police vehicle; (2) he had done so on the night of Polk's arrest; and (3) he had found nothing. Between this initial search by Hayworth and the time Polk was placed in the back seat, no other suspects or police officers had been in the rear seat area. By design the rear doors of Hayworth's police vehicle were locked at all other times because the car was used to transport prisoners. Hayworth testified that the rear seat area where the cocaine was found was not accessible from the front seat or the outside unless the officer opened the rear doors himself.

*Id.* at 568–569.

The State charged Polk with possession of over three grams of cocaine within one

thousand feet of school property as a class A felony,[2] possession of a schedule IV controlled substance (diazepam) within one thousand feet of school property as a class C felony,[3] possession of paraphernalia as a class A misdemeanor,[4] and being an habitual offender. The jury found Polk guilty of possession of cocaine as a class A felony, possession of a controlled substance as a class C felony, and being an habitual offender. The trial court sentenced Polk to serve thirty years for possession of cocaine concurrent with four years for possession of diazepam with ten years suspended, and five years on probation. The trial court enhanced the sentence by thirty years for the habitual offender finding for a total sentence of sixty years, with fifty years executed, ten years suspended, and five years on probation.

Polk appealed and challenged the sufficiency of the evidence and the enhancement of the sentences for possession within one thousand feet of school property. Our supreme court affirmed Polk's convictions and sentences. *Id.* at 573.

Polk then filed a petition for post-conviction relief, alleging that his convictions were based upon evidence obtained during an illegal search and seizure, he was denied a fair trial, and that he was denied the effective assistance of counsel at trial and on direct appeal. The post-conviction court entered findings of fact and conclusions thereon and denied all of Polk's claims. Specific portions of these findings of fact and conclusions thereon will be discussed in detail below.

■ Before discussing Polk's allegations of error, we note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State,* 810 N.E.2d 674, 679 (Ind.2004); Ind. Post–Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* Further, the post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post–Conviction Rule 1(6). *Id.* "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

## I.

The first issue is whether Polk was denied the effective assistance of trial counsel. To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *Ben–Yisrayl v. State,* 729 N.E.2d 102, 106 (Ind.2000) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), *reh'g denied* ), *reh'g denied, cert. denied,* 534 U.S. 830, 122 S.Ct. 73, 151 L.Ed.2d 38

---

**2.** Ind.Code § 35–48–4–6 (Supp.1995).

**3.** Ind.Code § 35–48–4–7(a) (Supp.1995).

**4.** Ind.Code § 35–48–4–8.3 (Supp.1995).

(2001). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *French v. State*, 778 N.E.2d 816, 824 (Ind.2002). To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* Failure to satisfy either prong will cause the claim to fail. *Id.* Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Id.*

Polk argues that he received ineffective assistance of trial counsel because counsel failed to: (A) file a motion to suppress evidence from Lamberson's car based on her involuntary consent; (B) challenge the scope and authority of Lamberson's consent to search the pouch; (C) file a motion to suppress evidence from the search of the fanny pack; and (D) object to the introduction of the drug test evidence as prejudicial and irrelevant. We will address each argument in turn.

### A. *Lamberson's Consent to Search the Car*

Polk argues that his trial counsel was ineffective because he failed to file a motion to suppress evidence based on Lamberson's consent to search the car.[5] On this issue, the post-conviction court's order provided:

> [Polk's] specific contention that he received ineffective assistance of counsel because defense counsel failed to challenge the constitutionality of Lamberson's consent to search her car fails as a

matter of law. Constitutional rights cannot be vicariously asserted. *Peterson v. State*, 674 N.E.2d 528, 532 (Ind. 1996). Thus, [Polk] had no standing to object to the constitutionality of the manner in which police obtained Lamberson's consent to search her own car. Nonetheless, the Court finds that [Polk] has not carried his burden of proving that Lamberson's consent was not freely and voluntarily given. Therefore, [Polk] has not proven that a motion to suppress based upon Lamberson's consent to search the car would have succeeded, and thus his ineffective assistance of counsel claim must fail.

Appellant's Appendix at 199.

The Fourth Amendment protects persons from unreasonable search and seizure, and this protection has been extended to the states through the Fourteenth Amendment. *Krise v. State*, 746 N.E.2d 957, 961 (Ind.2001). When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search. *Id.* A valid consent to search is one exception to the warrant requirement. *Id.* The theory underlying this exception is that, when an individual gives the State permission to search either his person or property, the governmental intrusion is presumably reasonable. *Pinkney v. State*, 742 N.E.2d 956, 959 (Ind.Ct. App.2001), *trans. denied.*

Fourth Amendment rights are personal and may not be vicariously asserted. *Rakas v. Illinois*, 439 U.S. 128, 133–134, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978), *reh'g*

---

**5.** In his appellate brief, Polk notes that "several violations of the Fourth Amendment and Article I, Section 11 of the Indiana Constitution" occurred. Appellant's Brief at 13. Nevertheless, Polk fails to provide an independent analysis of Article I, Section 11 of the Indiana Constitution; rather his focus is on the Fourth Amendment of the United States Constitution. Failure to make a cogent argument under Article I, Section 11 of the Indiana Constitution constitutes waiver of the issue on appeal. *See* Ind. Appellate Rule 46(A)(8); *West v. State*, 755 N.E.2d 173, 181 (Ind.2001).

*denied.* Thus, we agree with the post-conviction court's finding that Polk lacked standing "to object to the constitutionality of the manner in which police obtained Lamberson's consent to search her own car." Appellant's Appendix at 199. *See, e.g., Pollard v. State,* 270 Ind. 599, 604, 388 N.E.2d 496, 502 (Ind.1979) (holding that a mere passenger in an automobile owned by another may not complain of an unlawful search of the vehicle). We cannot say that the decision of Polk's counsel not to challenge Lamberson's consent was deficient or that it prejudiced Polk. Therefore, Polk was not denied the ineffective assistance of trial counsel, and the post-conviction court's denial of the petition for post-conviction relief on that issue is not erroneous.

**B.** *Scope of and Authority of Consent to Search the Pouch*

■ Polk also argues that his trial counsel was ineffective for failing to challenge the search of the pouch as exceeding the scope and authority of Lamberson's consent. The post-conviction court found:

> [Polk]'s specific contention that he received ineffective assistance of counsel because defense counsel failed to challenge the scope of the search based upon Lamberson's consent fails as a matter of law. At the time of [Polk]'s conviction, there was relatively little case law defining the permissible scope of the consent granted by a driver when there are passengers in the car. Since [Polk]'s conviction, a number of cases have clarified the issue. *See, e.g., State v. Friedel,* 714 N.E.2d 1231 (Ind.Ct.App.1999). Given the developments in the case law it is now clear that, when a driver gives consent to search a car, searching an item that turns out to belong to a passenger

may be upheld when the officer's actions in searching that item were objectively reasonable. *Norris v. State,* 732 N.E.2d 186 (Ind.Ct.App.2000). [Polk] has not proven that it was objectively unreasonable for officers to infer that searching the black bag on the dash was within the scope of the consent provided by Lamberson. When [Polk] got out of the car, taking one bag but leaving another, it was objectively reasonable for officers to infer that [Polk] was asserting an ownership interest in the bag he took and renouncing any ownership interest in the bag he left. Thus, it was objectively reasonable for officers to conclude that the scope of Lamberson's consent extended to the black bag left on the dash. Therefore, [Polk] has failed to prove that a motion to suppress based upon the scope of Lamberson's consent would have succeeded, and thus his ineffective assistance of counsel claim must fail.

Appellant's Appendix at 200.

■ A third party may consent to the search of the premises or property of another if actual or apparent authority exists. *Krise,* 746 N.E.2d at 967. Establishing actual authority requires a showing that there is a sufficient relationship to or mutual use of the property by persons generally having joint access or control for most purposes. *Id.* If actual authority cannot be shown, then facts demonstrating that the consenting party had apparent authority to consent could prove a lawful search. *Id.* Under the apparent authority doctrine, a search is lawful if the facts available to the officer at the time would cause a person of reasonable caution to believe that the consenting party had authority over the premises.[6] *Id.*

6. It is unclear whether Polk is actually asserting ownership in the pouch. The State only argues that Polk does not have an expectation of privacy in "Lamberson's car." Appellee's Brief at 6. "[I]n resolving a claim of unlawful search and seizure, an appellate court should

Polk argues that the facts of this case are similar to those of *Friedel* and *Krise*. In *Krise*, the defendant's housemate consented to a search of the defendant's home. *Krise*, 746 N.E.2d at 960. During the search, the police found a purse lying on top of the commode that contained marijuana and methamphetamine. *Id.* Our supreme court determined the issue to be "not only whether the purse was within the scope of the consent search, but also whether the third party had actual or apparent authority to consent to the search of the purse." *Id.* at 967. Our supreme court reasoned:

Rather than considering a third-party's authority to consent to the general search of the home as "all encompassing" to the search of every container found inside the home, we hold that the inspection of closed containers that normally hold highly personal items requires the consent of the owner or a third party who has authority—actual or apparent—to give consent to the search of the container itself.

In reaching this conclusion, we find that the type of container is of great importance in reviewing third-party consent search cases. Absent one of the well-delineated exceptions to the warrant requirement, "[a] container which can support a reasonable expectation of privacy may not be searched, even on probable cause, without a warrant." An expectation of privacy gives rise to Fourth Amendment protection where the defendant had an actual or subjective expectation of privacy and the claimed expectation is one which society recognizes as reasonable.

*Id.* at 969. (citations omitted). Our supreme court concluded:

We also find that the State failed to justify the search on the basis of apparent authority. At the time [the officer] decided to search [defendant's] purse, he knew that the handbag was a woman's purse and that [the defendant] was the only woman living in the house. Another officer testified that there was no doubt in his mind that the handbag seized was a woman's purse. There is no evidence showing that [the defendant's housemate] told police that he shared the purse, or had joint access to the purse in any way. The mere fact that the purse was located in the common area of the house did not render reasonable a belief that [defendant's housemate] had the requisite authority to consent to the search of [defendant's] purse.

*Id.* at 972.

In *Friedel*, the driver's consent to the search of his vehicle resulted in the search of a passenger's purse containing methamphetamine and marijuana. *Friedel*, 714 N.E.2d at 1235. We held that the issue was "not whether the purse was within the scope of the search, but whether the [third-party] had actual or apparent authority to consent to the search." *Id.* at 1239. The record was "unclear as to whether [the defendant] heard [the driver] give the officers consent to search his vehicle." *Id.* We found "no indication in the record that [the defendant] abandoned her purse by leaving it in the van after she and her child were ordered out of the vehicle by the officers." *Id.* at 1241. We reasoned:

Consent may not reasonably be implied from a passenger's silence or failure to object where the officer did not

not invoke lack of standing sua sponte." *Everroad v. State*, 590 N.E.2d 567, 569 (Ind. 1992), *reh'g denied*. Thus, we will address the merits of Polk's arguments as though he owned the pouch.

expressly or impliedly ask the passenger for consent to search. Additionally, although, the State suggests otherwise, there was no indication in the record that Friedel abandoned her purse by leaving it in the van after she and her child were ordered out of the vehicle by the officers. Moreover, to show abandonment, the State must show that Friedel relinquished her property with no intention of reclaiming it.

*Id.* We concluded that the driver did not have actual or apparent authority to consent to a search of the defendant's purse and it was unreasonable for the officers to conclude that he did. *Id.* at 1243.

Here, the post-conviction court found that it was objectively reasonable for officers to infer that Polk was asserting an ownership interest in the bag he took and renouncing any ownership interest in the bag he left. We agree. Here, unlike in *Friedel* or *Krise,* Polk was aware that Lamberson gave Officer Hayworth consent to search her car. Polk removed the fanny pack from the dashboard but left the pouch, which makes it objectively reasonable for the police officers to view Lamberson as having apparent authority to consent to a search of the pouch. Accordingly, Polk has failed to show deficient performance. The post-conviction court did not err by denying Polk's claim of ineffective assistance of trial counsel. *See, e.g., Norwood v. State,* 670 N.E.2d 32, 36 (Ind.Ct.App.1996) (holding that failure to object to evidence from a search was not ineffective assistance of counsel when third party consented to a search and no Fourth Amendment violation occurred).

### C. *Search of the Fanny Pack*

■ Polk next argues that his trial counsel was ineffective for failing to file a motion to suppress evidence from the search of the fanny pack. Although Polk consented to the search of his fanny pack, Polk argues that his consent to search the fanny pack was not voluntary and he was not informed of the right to consult with counsel. The post-conviction court's order provided:

[Polk's] specific contention that he received ineffective assistance of counsel because defense counsel failed to challenge the search of [Polk]'s person fails as a matter of law. [Polk] admitted at trial that he consented to the search of his fanny pack, and he has failed to prove that his consent was not freely and voluntarily given. It is most telling that Ivens, one of [Polk's] own witnesses, testified that he felt no fear and in fact withheld consent to search his car. Clearly [Polk] could have done the same but chose not to. Therefore, [Polk] has failed to prove that a motion to suppress based upon the search of [Polk's] person would have succeeded, and thus his ineffective assistance of counsel claim must fail.

Appellant's Appendix at 200–201.

■ A consent to search is valid except where procured by fraud, duress, fear, or intimidation or where it is merely a submission to the supremacy of the law. *Joyner v. State,* 736 N.E.2d 232, 242 (Ind. 2000). The voluntariness of a consent to search is a question of fact to be determined from a totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 248–249, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854 (1973).

The circumstances reveal that three officers were present at the scene. The police did not tell Polk that he was under arrest or not free to leave. Sergeant Payne asked Polk for his consent to search the fanny pack. Polk gave verbal consent to search the fanny pack and handed the fanny pack to Sergeant Payne. The totality of these circumstances indicates that Polk's consent was not procured by fraud,

duress, fear, or intimidation. Polk's consent to the search of his fanny pack was freely and voluntarily given and the search was therefore valid under the Fourth Amendment of the United States Constitution. *See, e.g., Smith v. State,* 713 N.E.2d 338, 343 (Ind.Ct.App.1999) (holding that a consent to search a car was voluntarily and freely given when no such indicators were present that defendant's consent was in any way induced by fraud, fear, or intimidation and none of the officers touched defendant or physically restrained his freedom of movement before he consented), *trans. denied.* Accordingly, a motion to suppress would not have been granted, and Polk has failed to show that trial counsel's performance was deficient.

█ Polk also argues that the police were required to inform him of his right to consult with counsel before he could have given a valid consent to search the fanny pack because he was in custody. Polk contends that he received ineffective assistance of counsel because had trial counsel moved to suppress the evidence found in his fanny pack based on the failure to inform him of his right to consult counsel, there is a reasonable probability that the court would have suppressed the evidence and he would not have been convicted.

█ Under the Indiana Constitution "a person in custody must be informed of the right to consult with counsel about the possibility of consenting to search before a valid consent can be given." *Torres v. State,* 673 N.E.2d 472, 474 (Ind.1996) (quoting *Jones v. State,* 655 N.E.2d 49, 54 (Ind.1995), *reh'g denied*). In *Pirtle v. State,* 263 Ind. 16, 28, 323 N.E.2d 634, 640 (1975), our supreme court held that a person who is asked to give his consent to a

search while in police custody is entitled to the presence and advice of counsel prior to making his decision. The record is clear that Polk was not advised he had a right to consult with counsel before consenting to a search of his fanny pack. However, we must determine whether the right to receive the advisement ever attached. The right can only be said to have attached if Polk was in custody when he consented to the search. *Joyner,* 736 N.E.2d at 241.

█ A defendant is deemed to be in custody if his freedom has been significantly deprived or if a reasonable person in the defendant's circumstances would not believe that he was free to leave. *White v. State,* 772 N.E.2d 408, 412 (Ind.2002). To determine whether a defendant is in custody, we apply an objective test, asking whether a reasonable person under the same circumstances would believe themselves to be "under arrest or not free to resist the entreaties of the police." *Torres,* 673 N.E.2d at 474 (quoting *Jones,* 655 N.E.2d at 55). The test is how "a reasonable person in the suspect's shoes would understand the situation." *Loving v. State,* 647 N.E.2d 1123, 1125 (Ind.1995).

Polk argues that he was in custody and relies on Officer Hayworth's testimony that once the pouch was identified as belonging to Polk, Polk was not free to leave.[7] We disagree. "Whether a person was in custody at a given time depends not upon the subjective views of either the interrogating officers or the subject being questioned but upon the 'objective circumstances.'" *Loving,* 647 N.E.2d at 1125 (quoting *Stansbury v. California,* 511 U.S. 318, 323, 114 S.Ct. 1526, 1529, 128 L.Ed.2d 293 (1994)). The record indicates that Officer Hayworth did not inform Polk that he was not free to leave until after the fanny

7. Neither Polk nor the State cite any case law in their appellate briefs for their assertions that Polk was or was not in custody.

pack was searched. "A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984). Thus, Officer Hayworth's subjective view that Polk was not free to leave is not the determinative factor.[8]

The record reveals that after Officer Hayworth found drug paraphernalia in the black pouch, Lamberson told Officer Hayworth the pouch belonged to Polk. Polk denied ownership of the pouch. Sergeant Payne then asked Polk for his consent to search Polk's fanny pack, and Polk consented and handed the fanny pack to Sergeant Payne. When Polk was asked for his consent to search the fanny pack, Polk was not in handcuffs and had not been told he was under arrest or not free to leave. We conclude that the objective circumstances indicate that Polk was not in custody when officers asked him for consent to search his fanny pack. *See, e.g., State v. Linck*, 708 N.E.2d 60, 64 n. 2 (Ind.Ct.App. 1999) (holding that defendant was not in custody until after he admitted smoking marijuana), *trans. denied.* We conclude that Polk has failed to demonstrate his trial counsel's failure to challenge the search of the fanny pack constituted deficient performance. The post-conviction court did not err by denying Polk's claim of ineffective assistance of counsel. *See, e.g., Canaan v. State*, 683 N.E.2d 227, 231–232 (Ind.1997) (holding that defendant failed to demonstrate that the failure of trial counsel to object to the admission of evidence from a valid search constituted

ineffective assistance of counsel), *reh'g denied, cert. denied*, 524 U.S. 906, 118 S.Ct. 2064, 141 L.Ed.2d 141 (1998).

### D. *Drug Test Evidence*

██ Polk also argues that he received ineffective assistance of trial counsel because counsel failed to make a proper, timely objection to the drug test evidence. In order to prevail on a claim of ineffective assistance of counsel due to a failure to object, a defendant must prove that an objection would have been sustained if made and that he was prejudiced by the failure. *Timberlake v. State*, 690 N.E.2d 243, 253 (Ind.1997), *reh'g denied, cert. denied*, 525 U.S. 1073, 119 S.Ct. 808, 142 L.Ed.2d 668 (1999).

██ Polk consented to a drug test. Officer Hayworth drove Polk to a nearby hospital for a drug test and accompanied Polk into a hospital bathroom to monitor Polk as he gave a urine sample. Polk's urine sample tested positive for cocaine, diazepam, and marijuana. Polk argues that his trial counsel was ineffective for failing to object to the introduction of this evidence at trial because the only purpose of the drug test evidence was to show Polk's propensity to commit a drug crime in violation of Ind. Evidence Rule 404(b), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided

---

**8.** Polk also relies on *Sellmer v. State,* 800 N.E.2d 671 (Ind.Ct.App.2003). However, we note that the Indiana Supreme Court granted transfer in that case, and therefore the opinion to which Polk cited has been vacated. *See*

Ind. Appellate Rule 58(A); *Wontorski v. Williamsburg Mobile Homes, Inc.,* 794 N.E.2d 433, 433 (Ind.2003). Thus, the precedent Polk relies upon no longer exists.

that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Ind. Evidence Rule 404(b) is "designed to prevent the jury from assessing a defendant's present guilt on the basis of his past propensities." *Hicks v. State*, 690 N.E.2d 215, 218 (Ind.1997).

The post-conviction court's order provided:

[Polk's] specific contention that he received ineffective assistance of counsel because defense counsel failed to object to evidence that he failed a drug screen fails as a matter of law. The Supreme Court instructs that if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. *Wentz, supra,* at 360. Even if the Court were to find that an objection to the evidence would have been sustained, [Polk] has proven no prejudice, as it is highly unlikely, given the weight of the other evidence against him, that the result of the trial would have been different. Furthermore, even if the failure to object could be characterized as a mistake, at worst it appears to be nothing more than an isolated incident, not sufficient by itself to overcome the strong presumption that defense counsel's performance, on whole, was adequate. Finally, [Polk] has not proven that the evidence was in fact irrelevant. Relevant evidence is defined by rule as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." IRE Rule 401. The results of [Polk's] drug screen tend to prove that [Polk] knew the object secreted in the crotch of his pants was in fact cocaine. Because knowledge of the presence of cocaine was an essential element of the charge against [Polk], the test results were relevant. Therefore, [Polk] has failed to prove that an objection to the admission of his failed drug screen would have been sustained, and thus his ineffective assistance of counsel claim must fail.

Appellant's Appendix at 201.

Polk argues that the drug test evidence "was completely irrelevant to any issue or element of the possession crimes with which he was charged." Appellant's Brief at 19. Even assuming that the drug test evidence was inadmissible and that Polk's trial counsel was deficient for failing to object, Polk has failed to show that he was prejudiced by the deficiencies. To succeed on such a claim, Polk must demonstrate that there is a reasonable probability that the result of the proceeding would have been different but for defense counsel's inadequate representation. *See Ben–Yis-rayl,* 729 N.E.2d at 106. However, even if Polk's trial counsel had objected to the admission of the evidence and the trial court had sustained the objection other evidence was admitted to demonstrate that Polk possessed cocaine and diazepam. Specifically, the police found cocaine in the fanny pack, diazepam in Polk's pockets, and cocaine in the police car where Polk was sitting. Therefore, we cannot conclude that there is a reasonable probability that the result of the proceeding would have been different but for trial counsel's inadequate representation. *See, e.g., Young v. State,* 746 N.E.2d 920, 927 (Ind. 2001) (finding no reasonable probability that the result of the proceeding would have been different if the defendant's trial counsel had performed adequately).

## II.

The second issue is whether the trial court improperly enhanced Polk's sentences. Polk argues that both of his convictions for possession within one thousand feet of a school were improperly enhanced because the police happened to stop Lamberson's car within one thousand feet of a school and the stop occurred "in the middle of the night in the middle of summer, when no children were present at the school." Appellant's Brief at 20. Our supreme court addressed this issue on direct appeal and held that "the school-zone enhancement applies to both of Polk's possession convictions as a matter of statutory construction...." *Polk*, 683 N.E.2d at 573.

Polk argues that P.L. 17–2001 § 29, effective July 1, 2001, codified as Ind.Code § 35–48–4–16, provided that this enhancement did not apply in two circumstances. Ind.Code § 35–48–4–16 provides, in pertinent part:

(b) It is a defense for a person charged under this chapter with an offense that contains an element listed in subsection (a) that:

(1) a person was briefly in, on, or within one thousand (1,000) feet of school property, a public park, a family housing complex, or a youth program center; and

(2) no person under eighteen (18) years of age at least three (3) years junior to the person was in, on, or within one thousand (1,000) feet of the school property, public park, family housing complex, or youth program center at the time of the offense.

(c) It is a defense for a person charged under this chapter with an offense that contains an element listed in subsection (a) that a person was in, on, or within one thousand (1,000) feet of school property, a public park, a family housing complex, or a youth program center at the request or suggestion of a law enforcement officer or an agent of a law enforcement officer.

The State argues that res judicata applies. "As a general rule, when an issue is decided on direct appeal, the doctrine of res judicata applies, thereby precluding the issue's review in post-conviction proceedings." *Saunders v. State*, 794 N.E.2d 523, 527 (Ind.Ct.App.2003) (citing *Ben–Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000), *reh'g denied, cert. denied*, 534 U.S. 1164, 122 S.Ct. 1178, 152 L.Ed.2d 120 (2002)). The review of this issue is precluded because our supreme court decided this issue on direct appeal.[9] *Polk*, 683 N.E.2d at 569–573.

[24, 25] Moreover, "subsequently enacted ameliorative statutes are available only if the statute becomes effective before sentencing." *Schwass v. State*, 554 N.E.2d 1127, 1130 (Ind.1990). Polk was sentenced on March 28, 1996 and the ameliorative statute did not become effective until July 1, 2001. Thus, the ameliorative statute is not available to Polk. The post-conviction court did not err by denying Polk's claim

9. Polk cites *State v. Huffman*, 643 N.E.2d 899 (Ind.1994), *reh'g denied*. In *Huffman*, our Supreme Court noted that even though the doctrine of res judicata may apply, we should maintain the option of reconsidering earlier cases in order to correct error. The Court stated that a "court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work manifest injustice." *Id.* (quotations omitted). "Coordinate" is defined as "one that is equal in importance, rank, or degree." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 293 (1981). We conclude that such language does not empower this court to reverse the ruling of our supreme court.

that he is entitled to the benefits of Ind. Code § 35–48–4–16.

For the foregoing reasons, we affirm the post-conviction court's denial of Polk's petition for post-conviction relief.

Affirmed.

FRIEDLANDER, J. concurs.

BAKER, J. concurs in result with separate opinion.

BAKER, Judge, concurring in result.

I fully concur with the majority on every issue, and I concur in result as to Part I.A. of the majority opinion. While I agree with the conclusions that the majority reached, I write separately to note the difference between a lack of standing to raise a claim and waiver of that claim.

The majority agrees with the trial court that Polk lacked standing to raise the Fourth Amendment claim that the police illegally searched Lamberson's vehicle. But "[e]very person in a motor vehicle has a right to contest the stop of the vehicle in which he is traveling as either a driver or passenger." *McKnight v. State*, 612 N.E.2d 586, 588 (Ind.Ct.App.1993) (citing *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)). The problem is not that Polk had no standing to raise this claim; the problem is that Lamberson effectively waived that right by giving the police consent to search her vehicle. *See Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991) (upholding search of vehicle where police officer could have reasonably believed that the driver's general consent to search his vehicle included the search of a paper bag discovered on the floor of the vehicle).

Because Lamberson gave general consent to search her vehicle, and the evidence does not demonstrate that she did so due to fear, fraud, duress, or intimi-dation, Polk's right to contest the search was waived. Therefore, the majority rightly concluded that Polk's counsel was not deficient for failing to challenge Lamberson's consent. For these reasons, I concur with the majority opinion, but concur in result as to part I.A.