Richard L. FRIEND, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 84A04–0512–CR–753.

Court of Appeals of Indiana.

Dec. 18, 2006.

---

Edward A. McGlone, Terre Haute, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Richard Friend ("Friend") was convicted in Vigo Superior Court of Class D felony possession of methamphetamine. He appeals, raising the following restated issue: whether the trial court abused its discre-

tion in admitting evidence resulting from a search of Friend's car. Concluding that the evidence was improperly admitted, we reverse.

### Facts and Procedural History

On the morning of April 4, 2004, Indiana State Trooper Ken Rowan ("Trooper Rowan") clocked a tan Buick Park Avenue driven by Friend traveling 65 miles per hour in a 45 miles per hour zone on U.S. 40 in Seelyville. Trooper Rowan activated his lights and followed Friend as he made a sharp left turn onto Main Street. Friend pulled into the parking lot of a convenience store, exited his car, and hurried inside. Trooper Rowan followed Friend inside and caught up to him just outside the restrooms. Trooper Rowan asked Friend for identification. Friend responded that he was not feeling well and needed to use the restroom. Trooper Rowan performed a pat-down search for weapons, then allowed Friend to use the restroom.

Friend came out of the restroom a short time later and accompanied Trooper Rowan to his car, but was unable to find his identification. Trooper Rowan directed Friend to sit in the front passenger seat of his patrol car. He informed Friend that he had exceeded the posted speed limit. Friend did not have his driver's license, but told Trooper Rowan his name and date of birth. Trooper Rowan observed that Friend's car bore a Kansas temporary license plate that had expired the previous day. He then discovered that Friend's driver's license was suspended.

Trooper Rowan informed Friend that he was issuing him citations for speeding, driving with an expired plate, and driving while suspended, but that he was not going to arrest him. Thirty minutes into the stop, he then told Friend that his car would be towed. Tr. p. 23.[1] Friend informed Trooper Rowan that he was a student at Indiana State University and asked if he would be allowed to remove his books and belongings from the car. Trooper Rowan assured Friend that he could get his belongings before the car was towed.

During this exchange, Trooper Rowan observed that Friend was acting "[v]ery nervous [and] agitated[,]" and that he "[w]ouldn't sit still [and] moved around a lot." *Id.* at 24. When Trooper Rowan got out of his patrol car to confirm Friend's vehicle identification number for the towing form, he "told [Friend] several times to stay inside the vehicle and he didn't do that." *Id.* at 43. Because Friend attempted to exit the patrol car when he did, Trooper Rowan decided to wait for backup officers to arrive. Meanwhile, the tow truck Trooper Rowan called had arrived. Trooper Rowan asked the tow truck driver to "stall" with the preparations for towing until backup officers arrived. Meanwhile, Friend gave his car key to Trooper Rowan and the tow truck driver so the driver could move his car in order to tow it.

When a Vigo County Sheriff's deputy and another state trooper arrived, Trooper Rowan placed Friend in handcuffs, and "advised him he wasn't under arrest, but [he] was putting on these handcuffs . . . to detain him until I could find out more about the situation, and why he was acting the way he was." *Id.* at 35. Trooper Rowan then asked Friend for permission to search his car. Friend told the officer to "go ahead, I'm not going to lie." Appellant's App. p. 103. Trooper Rowan proceeded to search Friend's car and dis-

---

1. The record contains separately bound transcripts of each of the proceedings held in this case. All references in this opinion are to the transcript of the suppression hearing conducted on December 20, 2004.

covered a cigarette pack in the front passenger seat. Inside the pack, he found three small packets of a white substance. He then went back to his patrol car and questioned Friend, who replied that the substance was methamphetamine. A field test confirmed the presence of methamphetamine.

On April 7, 2004, the State charged Friend with Class D felony possession of methamphetamine and Class A misdemeanor driving while suspended. Prior to trial, Friend filed a motion to suppress the methamphetamine evidence found in his car. Following an evidentiary hearing, the trial court denied the motion, and later denied Friend's motion to certify the order for interlocutory appeal. At the conclusion of a bench trial, the court convicted Friend as charged. He now appeals his conviction of Class D felony possession of methamphetamine.

### Standard of Review

■ Although Friend originally challenged the admission of the evidence through a motion to suppress, he appeals following a completed bench trial and challenges the admission of such evidence at trial. "Thus, the issue is … appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial." *Washington v. State*, 784 N.E.2d 584, 587 (Ind.Ct.App.2003). Our standard of review of rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by trial objection. *Ackerman v. State*, 774 N.E.2d 970, 974–75 (Ind. Ct.App.2002), *trans. denied.* We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Collins v. State*, 822 N.E.2d 214, 218 (Ind.Ct.App.2005), *trans. denied.* However, we must also consider the uncontested evidence favorable to the defendant. *Id.*

### Discussion and Decision

Both the Fourth Amendment to the U.S. Constitution and Article I, Section 11 of the Indiana Constitution provide "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures[.]" U.S. Const. Amend. IV; Ind. Const., art. I § 11. Created to protect the right to privacy, this protection against unreasonable state-sponsored searches and seizures is " 'a principal mode of discouraging lawless police conduct.' " *Jones v. State*, 655 N.E.2d 49, 54 (Ind.1995) (quoting *Terry v. Ohio*, 392 U.S. 1, 12, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

■ When the police conduct a search without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search. *Polk v. State*, 822 N.E.2d 239, 245 (Ind.Ct.App.2005), *trans. denied.* Friend contends that the trial court erred when it denied his motion to suppress because the State did not establish that the search of his car fell within any of the recognized exceptions to the warrant requirement. In response, the State argues both that Friend consented to the search and that the search was a proper inventory search.

### I. Consent to Search Exception

■ A valid consent to search is a recognized exception to the warrant requirement. *Krise v. State*, 746 N.E.2d 957, 961 (Ind.2001); *Polk*, 822 N.E.2d at 245. The theory underlying this exception is that, when an individual gives the State permission to search either his person or property, the governmental intrusion is presumably reasonable. *Buckley v. State*, 797 N.E.2d 845, 849 (Ind.Ct.App.2003) (citing *Pinkney v. State*, 742 N.E.2d 956, 959 (Ind.Ct.App.2001), *trans. denied*).

When seeking to rely upon consent to justify a warrantless search, the State has the burden of proving that the consent was freely and voluntarily given. *Smith v. State*, 713 N.E.2d 338, 342–43 (Ind.Ct.App.1999), *trans. denied.* The voluntariness of the consent to search is to be determined by consideration of the totality of the circumstances. *Ransom v. State*, 741 N.E.2d 419, 423 (Ind.Ct.App.2000), *trans. denied.*

Indiana law on consent to search derives from *Pirtle v. State*, 263 Ind. 16, 323 N.E.2d 634 (1975), which held that "a person who is asked to give consent to search while in police custody is entitled to the presence and advice of counsel prior to making the decision whether to give such consent." 263 Ind. at 29, 323 N.E.2d at 640. This right may be waived, but the State has the burden of showing that such waiver was explicit. *Id.* Thus, "a person in custody must be informed of the right to consult with counsel about the possibility of consenting to a search before a valid consent can be given." *Jones*, 655 N.E.2d at 54 (citing *Sims v. State*, 274 Ind. 495, 498, 413 N.E.2d 556, 558 (1980)). However, as noted in *Jones*, there is no bright-line test for determining when an investigatory stop becomes a custodial interrogation. *Id.* at 55.

We determine whether a person is "in custody" by applying an objective test asking whether a reasonable person under the same circumstances would believe that he was under arrest or not free to resist the entreaties of the police. *Sellmer v. State*, 842 N.E.2d 358, 363 (Ind.2006) (citing *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)); *Jones*, 655 N.E.2d at 55 & n. 4 (observing that "Justice O'Connor aptly pointed out in *Bostick* [that] the objective test is that of a reasonable innocent person").

Without question, a reasonable innocent person in Friend's position would not believe that he was free to leave or to resist the entreaties of the police. The State points out that Trooper Rowan told Friend that he was not under arrest. However, when the officer asked Friend for consent to search his vehicle, Friend had already been patted down for weapons, detained roughly forty-five minutes, and told repeatedly to stay in the patrol car. Finally, Friend was handcuffed but not Mirandized. Friend was clearly "in custody" when asked to consent to the search and was not informed of his right to counsel before his consent was obtained. Thus, the State failed to establish that the search fell within the valid consent to search exception.

## II. Inventory Search Exception

Next, the State argues that the evidence was the product of an inventory search, another well-recognized exception to the warrant requirement. *See Colorado v. Bertine*, 479 U.S. 367, 371, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *South Dakota v. Opperman*, 428 U.S. 364, 372, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Woodford v. State*, 752 N.E.2d 1278, 1281 (Ind.2001); *Fair v. State*, 627 N.E.2d 427, 431 (Ind. 1993).

Courts must examine all the facts and circumstances of a case to determine the reasonableness of an inventory search. *Fair*, 627 N.E.2d at 431 (citing *Opperman*, 428 U.S. at 375, 96 S.Ct. 3092). This examination typically encompasses two overlapping sets of circumstances. First, the propriety of the impoundment must be established because the need for the inventory arises from the impoundment. Second, the scope of the inventory must be evaluated. Id. Where either is clearly unreasonable, the search will not be upheld. "In borderline cases, however, the ultimate character of the search is

often most clearly revealed when both the necessitousness of the impoundment and the scrupulousness of the inventorying are viewed together." *Id.*

Here, Friend does not contest that Trooper Rowan was justified in impounding his car. However, "[e]ven the lawful custody of an impounded vehicle does not itself dispense with the constitutional requirement of reasonableness in regard to the searches conducted thereafter." *Fair,* 627 N.E.2d at 435.

In order to insure that the search is not a pretext "for general rummaging in order to discover incriminating evidence[,]" the State must establish that the search was conducted pursuant to standard police procedures. *Id.* (quoting *Florida v. Wells,* 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990)). *See also Lyles v. State,* 834 N.E.2d 1035 (Ind.Ct.App.2005).

In order to meet its burden, the State must do more than offer a mere statement of a police officer that the search was performed as a routine inventory. *Stephens v. State,* 735 N.E.2d 278, 282 (Ind.Ct.App.2000), *trans. denied.* The circumstances of the intrusion must also indicate that the search was carried out under routine department procedures which are consistent with the protection of officers from potential danger and false claims of lost or stolen property and the protection of those arrested. *Moore v. State,* 637 N.E.2d 816, 820 (Ind.Ct.App.1994) (quoting *Rabadi v. State,* 541 N.E.2d 271, 275 (Ind. 1989)).

At the suppression hearing, the State offered into evidence a portion of the Indiana State Police standard operating procedure for inventorying a vehicle, which provides that "[a]n inventory is not necessary when the owner of the vehicle is present and is in the position to, and capable of, taking custody of the property with-

in the vehicle." Ex. Vol., State's Ex. 1. In addition, Trooper Rowan testified at the hearing that he had told Friend that he could gather his belongings before the car was towed. Tr. p. 46. Moreover, Trooper Rowan admitted at the suppression hearing that he was not conducting an inventory, but was searching for contraband when he discovered the cigarette pack containing baggies of methamphetamine. *Id.* at 47.

The State clearly failed to carry its burden of proving that the search of Friend's car was a valid inventory search; thus the trial court abused its discretion when it admitted the methamphetamine into evidence.

Finally, the State does not argue that, even if the warrantless search was constitutionally impermissible, the admission of the evidence recovered from Friend's car amounts to harmless error. Indeed, without that evidence, the State presented insufficient evidence to support Friend's conviction. Therefore, we reverse and order the trial court to vacate his conviction for Class D felony possession of methamphetamine.

## Conclusion

The trial court abused its discretion when it admitted the methamphetamine at issue into evidence.

Reversed.

KIRSCH, C.J., and SHARPNACK, J., concur.