

**FILED**

Dec 21 2020, 9:44 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Glen E. Koch II
Boren, Oliver & Coffey, LLP
Martinsville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

Jeremy D. Cox,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

December 21, 2020

Court of Appeals Case No.
20A-CR-899

Appeal from the Brown Circuit
Court

The Hon. Mary Wertz, Judge

Trial Court Cause No.
07C01-1902-CM-46

**Bradford, Chief Judge.**

# Case Summary

In December of 2018, Indiana State Police Trooper Matthew Hatchett stopped a truck in which Jeremy Cox was a passenger because it did not have a functional license-plate light and had a broken frame. After telling Cox that he was free to leave and could refuse his consent, Trooper Hatchett asked for Cox's consent to search his person, and Cox gave it. Trooper Hatchett's search uncovered a socket containing marijuana. The State charged Cox with Class C misdemeanor illegal possession of paraphernalia, and, after the trial court denied Cox's motion to suppress evidence uncovered in the search, a jury found him guilty as charged. Cox contends that the trial court erred in denying his motion to suppress because the search of his person allegedly violated provisions of the United States and Indiana Constitutions. Because we disagree, we affirm.

# Facts and Procedural History

After sundown on December 18, 2018, Trooper Hatchett was parked in a parking lot when he observed a black Nissan pickup truck drive by on Salt Creek Road in Brown County. Trooper Hatchett noticed that the truck had no functioning license-plate light and that its frame appeared to be broken and therefore unsafe, both of which constitute traffic infractions. Trooper Hatchett stopped the truck and identified its occupants as driver Joseph Lawson and passengers Cherie Lawson and Cox. Trooper Hatchett verified that the truck's frame was broken and informed the occupants that it would have to be towed for safety reasons. Trooper Hatchett had the occupants exit the truck and told

Cherie and Cox that they were free to go and Joseph that he was free to go once the paperwork for the infractions was complete. All three elected to stay and wait for a ride.

[3] Because the trio elected to stay and would be in the vicinity until their ride arrived, Trooper Hatchett asked for their consent to search their persons for officer-safety reasons. Cherie refused to consent to a search of her person and was not searched. Cox, who was not restrained in any fashion and was told that he did not have to consent to the warrantless search, gave his consent. Brown County Sheriff's Deputy Colton Magner arrived at the scene after Trooper Hatchett had obtained consent from Cox to search his person but did not believe that Cox had already been searched. Trooper Hatchett found on Cox's person a small socket containing marijuana, which Trooper Hatchett recognized from training and experience. At some point after Deputy Magner arrived, Sergeant Scott Bowling of the Brown County Sheriff's Department and Nashville Police Officer Brenten Barrow arrived at the scene to assist. Cox was given a summons to appear, and he, Cherie, and Joseph left the scene when somebody came to pick them up.

[4] On February 12, 2019, the State charged Cox with Class C misdemeanor illegal possession of paraphernalia. On September 27, 2019, Cox moved to suppress evidence of the paraphernalia on the grounds that it was discovered in violation of the state and federal constitutions. On January 2, 2020, after a hearing, the trial court denied Cox's motion to suppress. On January 22, 2020, a jury found

Cox guilty as charged, and, on March 10, 2020, the trial court sentenced Cox to eight days of incarceration.

# Discussion and Decision

[5] A trial court has broad discretion in ruling on the admissibility of evidence. *Washington v. State*, 784 N.E.2d 584, 587 (Ind. Ct. App. 2003). This Court will reverse a trial court's ruling on the admissibility of evidence only when it constitutes an abuse of discretion. *Id.* An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id.* Moreover,

> when a trial court has admitted evidence alleged to have been discovered as the result of an illegal search or seizure, we generally will assume the trial court accepted the evidence presented by the State and will not reweigh that evidence, but we owe no deference as to whether that evidence established the constitutionality of a search or seizure.

*Johnson v. State*, 992 N.E.2d 955, 957 (Ind. Ct. App. 2013), *trans. denied.* Cox contends that the evidence seized following the traffic stop was obtained in violation of the Fourth Amendment to the United States Constitution and Article 1, Sections 11 and 13, of the Indiana Constitution and so should have been suppressed.

# I. Fourth Amendment

[6] The Fourth Amendment to the United States Constitution provides that

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon

probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. A warrantless search or seizure is *per se* unreasonable, and the State bears the burden to show that one of the "well-delineated exceptions" to the warrant requirement applies. *M.O. v. State*, 63 N.E.3d 329, 331 (Ind. 2016) (citations omitted). A voluntary and knowing consent to search is one well-established exception to the warrant requirement. *Meyers v. State*, 790 N.E.2d 169, 172 (Ind. Ct. App. 2003).

[7] Cox's argument is more-or-less premised entirely on his claim that he was first detained after the purpose of the traffic stop was fulfilled and then placed in custody, which allegedly rendered his consent invalid. A person is in custody if he is under arrest or deprived of his freedom of movement to a degree akin to arrest. *Luna v. State*, 788 N.E.2d 832, 833 (Ind. 2003). Only when an officer, by means of physical force or show of authority, has in some way restrained the person's liberty can he be found to be in custody. *Id.* at 833–34 (citing *Florida v. Bostick*, 501 U.S. 429, 433–34 (1991)). We conclude that there is sufficient evidence to support a finding that Cox was never in custody or detained unnecessarily. Neither Trooper Hatchett nor any other officer handcuffed or otherwise physically restrained Cox, and there is no evidence that any officer used a show of authority to restrain Cox. In fact, the record indicates that Trooper Hatchett explicitly told Cox that he was free to go and then that he could refuse to consent to the search. We conclude that a reasonable person would have felt free to disregard the officers' inquiries and go about his

business.  We think it worth noting that Cherie seems to have done just that, refusing Trooper Hatchett's request for consent to search her person with no negative consequences to herself.

[8] Cox also points to his testimony that Trooper Hatchett retained his identification throughout the encounter and confiscated a knife from him. Trooper Hatchett, however, testified that, while he could not specifically remember giving Cox back his identification, he thought "that I would have brought them back, gave them to them, because I already [had] all of his information[,]" implying that he returned Cox's identification once he verified his identity and ran his license.  Tr. Vol. II p. 23.  Moreover, the only evidence regarding a knife being at the scene at all is Cox's self-serving testimony to that effect, and, in fact, Trooper Hatchett was not even asked at the suppression hearing if he had obtained a knife from Cox.  Cox also contends that Trooper Hatchett told him that he could not leave until the "paperwork" was done, but Trooper Hatchett specifically testified that he only told Joseph that because only Joseph had committed an infraction.  Finally, while Cox suggests that he felt coerced into consenting to the search by the presence of four police officers, the record indicates that Trooper Hatchett was the only officer present when consent was given.  To the extent that Cox's testimony conflicts with other evidence in the record, the trial court was under no obligation to credit it, and apparently did not.  As mentioned, we generally assume on appeal that the trial court resolved all evidentiary conflicts in favor of the State.  In the end, Cox's

arguments in this regard are nothing more than invitations to reweigh the evidence, which we will not do. *See Johnson*, 992 N.E.2d at 957.

[9] That said, whether Cox was in custody is not the only relevant consideration in determining if his consent was voluntary. *Polk v. State*, 822 N.E.2d 239, 248 (Ind. Ct. App. 2005). A consent to search is valid except where it is procured by fraud, duress, fear, or intimidation, or where it is merely a submission to the supremacy of the law. The voluntariness of the consent is a question of fact to be determined from the totality of the circumstances. *Id.* The totality of the circumstances includes, but is not limited to, such factors as the defendant's education and intelligence, whether the defendant was informed of his *Miranda* rights, whether the defendant has had previous encounters with law enforcement, whether the officer claimed authority to search without consent, whether the defendant was told he had the right to refuse consent, whether the officer was engaged in any illegal action prior to the request, and whether the officer was deceptive as to his true identity or the purpose of the search. *Meyers*, 790 N.E.2d at 172.

[10] Although there is nothing in the record touching on Cox's education or possible prior contacts with law enforcement, all other relevant factors weigh in favor of his consent being voluntary. Trooper Hatchett never told Cox that he was being investigated for a crime and neither interrogated Cox prior to asking him for consent to search his person nor suggested that he would suffer adverse consequences for declining to grant consent. Trooper Hatchett also specifically told Cox that he did not have to consent to the search. In addition, Trooper

Hatchett engaged in no illegality, was never deceptive about his true identity or the purpose of his search, and only requested consent to search after the occupants chose to remain on the scene, who, at the time, outnumbered him three to one. Although Cox was not advised of his *Miranda* rights, no such advisement was required because, as discussed above, Cox was never in custody. *See Meyers*, 790 N.E.2d at 172; *Ammons v. State*, 770 N.E.2d 927, 933–34 (Ind. Ct. App. 2002). Moreover, Trooper Hatchett never claimed authority to search without consent, and his interactions with Cox and the other occupants occurred in a public setting, not in a police-dominated, institutional atmosphere like a police station. Cox himself confirmed that he was never handcuffed, placed under arrest, or told that he was being investigated for a crime.

[11] In summary, the record indicates that Trooper Hatchett simply approached Cox and asked if he could search him, which does not even implicate the Fourth Amendment. *See Bentley v. State*, 846 N.E.2d 300, 305–07 (Ind. Ct. App. 2006); *Cochran v. State*, 843 N.E.2d 980, 983–85 (Ind. Ct. App. 2006), *reh'g denied*; *see also Bostick*, 501 U.S. at 434–35 (1991). We conclude that the totality of circumstances indicates that Cox's consent was knowing and voluntary. *See, e.g.*, *Navarro v. State*, 855 N.E.2d 671, 675–80 (Ind. Ct. App. 2006) (finding consent voluntary even though officer retained the defendant's driver's license during the investigative stop and never said he had a right to refuse consent or advised him of his *Miranda* rights because the officer was not deceptive, never implied the authority to search without consent, the defendant was not in

custody, and he assisted by opening the trunk for the officer); *Meyers*, 790 N.E.2d at 172 (finding valid consent where the defendant was not advised of his rights or told he could refuse consent, was not in custody, was a high school graduate and had prior encounters with law enforcement, and the officer did not threaten or deceive him); *Ammons*, 770 N.E.2d at 934 (finding valid consent to search where two officers stopped the defendant, he was not read his *Miranda* rights, and the officers did not engage in any illegal activity or deception). Consequently, the trial court did not abuse its discretion in denying Cox's motion to suppress on the ground that the search violated the Fourth Amendment.

# II. Article 1, Sections 11 and 13

[12] Cox also challenges admission of the evidence pursuant to Article 1, Sections 11 and 13, of the Indiana Constitution. Article 1, Section 11 provides that

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

Article 1, Section 13, provides, in part, that "[i]n all criminal prosecutions, the accused shall have the right […] to be heard by himself and counsel[.]"

[13]       Although the wording of Section 11 is almost identical to that of the Fourth Amendment, our State Constitution's search and seizure clause is given an independent interpretation and application. *Myers v. State*, 839 N.E.2d 1146, 1153 (Ind. 2005). In fact, Indiana's Constitution sometimes offers broader protections than those offered by the U.S. Constitution. *Conley v. State*, 972

N.E.2d 864, 879 (Ind. 2012).  Amongst those broader protections offered by our State Constitution is the requirement that, prior to obtaining consent to a search, police must explicitly advise a person in custody of her right to consult with counsel.  It is unique to Indiana and has no federal counterpart.  *See United States v. LaGrone*, 43 F.3d 332, 337 (7th Cir. 1994) ("A person in custody has no federal constitutional right to consult with an attorney before consenting to a search of his property.  However, the Indiana [C]onstitution does afford such a right.").

*Dycus v. State*, 108 N.E.3d 301, 304 (Ind. 2018).  This rule was established by the Indiana Supreme Court in the case of *Pirtle v. State*, in which the Court held "that a person who is asked to give consent to search while in police custody is entitled to the presence and advice of counsel prior to making the decision whether to give such consent."  263 Ind. 16, 29, 323 N.E.2d 634, 640 (1975).

[14] The threshold question for purposes of *Pirtle* is whether Cox was in custody when Trooper Hatchett obtained his consent to search his person.  If not, *Pirtle* does not apply.  We have already concluded that Cox was not in custody at any point during the encounter in question.  To reiterate, the record supports findings that none of the officers restrained Cox in any way and that Trooper Hatchett explicitly told him that he was free to go, told him he could refuse to consent to the search, and did not retain his license throughout the encounter.  Cox was not interrogated before consent was sought and was never told that he was suspected of committing a crime.  Moreover, there is no indication of any other show of authority that would have made a reasonable person feel that he was not free to leave; Trooper Hatchett was the only officer on the scene when Cox's consent was obtained, and the entire encounter took place beside a public

road, as opposed to a police station. Indeed, even after contraband was found on his person, Cox was released with a summons to appear. Because Cox was never in custody, the *Pirtle* requirement to advise him he had the right to consult with an attorney before consenting to a search of his person was not triggered. The trial court did not err in denying Cox's motion to suppress on the alleged ground that the search of his person violated Article 1, Sections 11 and 13, of the Indiana Constitution.

[15] We affirm the judgment of the trial court.

Kirsch, J., and May, J., concur.